**Carl Cleo McCLURE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60906.**

Court of Criminal Appeals of Texas, Panel No. 2.

May 20, 1981.

Stan Brown, Abilene, for appellant.

Patricia A. Elliott, Dist. Atty., R. Jack Grant, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated rape. After the jury found appellant guilty, punishment, enhanced by two prior convictions, was assessed at life.

In his second ground of error, appellant contends the court erred in overruling his objection to an improper question. He maintains the question was improper because the answer revealed that a codefendant to the same offense had been convicted.

The complainant testified that on May 5, 1978, she was employed as a waitress in Abilene. She left work at 10:30 p.m. and went to three different clubs for some drinks. Approximately two hours later, she

was driving home when her car developed engine problems. She related that while her car was disabled, appellant drove by in another car with a man she later learned to be Roy Hartley.

Appellant offered to help the complainant with her car. She then entered appellant's car and the three individuals drove to a service station and bought some gasoline. They then returned to the complainant's car which appellant was able to start. The complainant testified that she allowed appellant to drive her car back to the service station in order to return a borrowed gasoline can. While the complainant and appellant were in her car, Hartley followed them in appellant's car. After stopping at the service station, she agreed for appellant to drive her home. Hartley continued to follow in a second car. The complainant testified that during the second stop at the service station, appellant saw a friend he introduced as Rudy.

As they approached the complainant's home, appellant informed her that he would like to buy her a soft drink. The three individuals in the two cars then proceeded to a nearby grocery. Appellant and Hartley entered the grocery and left the complainant alone in her car. The men then returned and appellant once again drove the complainant's car.

She stated that rather than driving her home, appellant drove her car down a dirt road and into a field. Hartley arrived a short time later and entered the complainant's car. The men then threatened to kill her and appellant produced a knife. The men forced her to undress. She testified that appellant then had sexual intercourse with her in the backseat of her car. In the meantime, Hartley was standing outside of the car taking his clothes off.

Appellant and the complainant then left her car and she was ordered to lie down on the ground. Hartley then had sexual intercourse with her. The complainant related that both the men performed various acts of deviate sexual intercourse with her. With regard to the offense, the complainant testified:

"Q. Did this Defendant, Carl Cleo McClure, or Roy Hartley, either one, have your permission and consent to have sexual intercourse with you that night?

"A. No, sir.

"Q. Did you submit to what they did only by force that they applied to you, and by threat of death and serious bodily injury against you?

"A. Yes, sir."

Following the offense, Hartley pointed a shotgun at the complainant. She stated that she thought that Hartley was about to kill her. However, appellant told her to get back in her car and he drove her home with Hartley following in a second car. She related the details of the offense to her mother later that day.

Shirley Glandon, of the Abilene Rape Crisis Center, testified that she was contacted by the complainant in the late afternoon of May 7, 1978. Glandon then met with the complainant and she agreed to report the incident to the police.

Officer Ed Carter, of the Abilene Police Department, testified that after speaking with the complainant, he showed her a photo spread. She picked appellant and Hartley's pictures out of the pictures which were shown to her. Carter then initiated criminal charges against both men and arrested Hartley the following day.

The questions and answers of which appellant complains in this ground of error occurred during the examination of Carter. In this regard, the record reflects:

"Q. Okay. Do you know where Hartley is now?

"MR. BROWN: Your Honor, we will object to that question, attempting to introduce impermissible evidence relating to the disposition of another defendant in this case.

"THE COURT: I'll overrule your objection.

"MR. BROWN: Note our exception.

"Q. Do you know where he is?

"A. Yes, I do.

"Q. Where is he?

"A. In the Texas Department of Corrections.

"Q. At Huntsville?

"A. That's correct.

"MR. BROWN: Your Honor, again we object to that question and ask that the Jury be instructed to disregard the Officer's answer.

"MR. INGALSBE: It doesn't refer to this case at all, but it just refers to where he is.

"THE COURT: I'll overrule your objection."

Rudy Lopez testified on behalf of the appellant. Lopez stated that on the night of the offense, he saw appellant at a service station. He related that appellant was in a car kissing a woman. Lopez testified the woman was not resisting appellant's advances.

Appellant admitted that he and Hartley had sexual intercourse with the complainant. He testified that they did not force or threaten her in any manner. Appellant stated that the complainant consented to the men's actions toward her.

Trial in the instant case commenced on October 4, 1978. Attached to appellant's motion for new trial are certified copies of the judgment, sentence and indictment in Cause No. 5846–B in the 104th Judicial District Court of Taylor County styled *The State of Texas vs. Roy William Hartley.* Those documents reveal that on August 9, 1978, Hartley was convicted of the aggravated rape of the complainant in the instant offense and assessed punishment of 12 years.

In *Walker v. State,* Tex.Cr.App., 530 S.W.2d 572, the Court quoted the following from *Bacon v. State,* 147 Tex.Cr.R. 605, 183 S.W.2d 177:

". . . It is well established as a general rule that upon the trial of one charged with crime it is not permissible to show that another jointly or separately indicted for the same offense has been convicted or acquitted. Wharton's Crim. Evidence, 11 Ed., Vol. 2, p. 1216, Sec. 724; 22 C.J.S.

Criminal Law § 784, p. 1334; *Giles v. State,* 109 Tex.Cr.R. 234, 4 S.W.2d 66; *Bell v. State,* 33 Tex.Cr.R. 163, 25 S.W. 769; *Harper v. State,* 11 Tex.App. 1; *Walding V. State,* 135 Tex.Cr.R. 430, 120 S.W.2d 1052. Cited in the notes under the sections in the text books will be found many cases from other jurisdictions supporting the principal announced in the Texas cases (supra)." Id. at 573.

See *Rodriguez v. State,* Tex.Cr.App., 552 S.W.2d 451; *Thornton v. State,* Tex.Cr. App., 542 S.W.2d 181; *Ramirez v. State,* Tex.Cr.App., 543 S.W.2d 631; *Hargett v. State,* Tex.Cr.App., 534 S.W.2d 909; *Tucker v. State,* Tex.Cr.App., 461 S.W.2d 630.

The State maintains there was no error in the court overruling appellant's objections to the questions because the answers "did not directly or indirectly bring up the offense for which the co-actor [Hartley] had been convicted." Such being the case, the State contends there was no error in establishing the present whereabouts of the codefendant even if such evidence revealed that he was in prison.

A prosecutor should not endeavor to get before a jury by inference facts which are not provable directly. *Bundren v. State,* 152 Tex.Cr.R. 45, 211 S.W.2d 197; *Wortham v. State,* 134 Tex.Cr.R. 626, 115 S.W.2d 650. In *Vargas v. State,* Tex.Cr. App., 442 S.W.2d 686, 687, the State called a coindictee who had previously been convicted for the burglary with which the defendant was charged. Upon the witness' refusal to testify, the prosecutor stated: "This man has no right to refuse to testify on the grounds of incrimination. He's already been convicted of the offense for which he is to be questioned." The conviction was reversed after the Court concluded that the above quoted statement was improper because it informed the jury that the defendant's coindictee had been convicted. Id. at 687.

In the instant case, the complainant testified that appellant and Hartley had raped her under circumstances which would constitute aggravated rape. She then iden-

tified both men from photo spreads prepared by Carter. On the basis of this identification, it was developed before the jury that Carter initiated criminal charges against both men for the offense. Hartley was then arrested for the same offense for which appellant stood trial. Over objection, the State was permitted to show that at the time of appellant's trial, Hartley was incarcerated in the Texas Department of Corrections.

It is a matter of common knowledge that an individual is incarcerated in the Texas Department of Corrections as a result of a conviction for conduct which constitutes a felony offense. In view of the facts actually prove at trial, we conclude that the logical inference for the jury to have drawn was that appellant's codefendant, Hartley, had been convicted of the same offense for which appellant was then standing trial.

The harm of inferentially showing that Hartley had been convicted of the aggravated rape of the complainant is readily apparent. Appellant testified that his and Hartley's sexual intercourse with the complainant had occurred with her consent. In *Rubio v. State*, 607 S.W.2d 498, this Court stated as follows with regard to a defensive theory of consent in a rape prosecution:

"In order to be convicted of rape appellant must have engaged in the conduct intentionally and knowingly without the prosecutrix's consent. It is the lack of consent on the part of the prosecutrix that is the essence of the offense of rape. When the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of prosecutrix. His intent is thereby placed in issue. Such intent cannot be inferred from the mere act of intercourse with the prosecutrix. The indictment herein alleges a lack of consent by means of force and threats." Id. at 501.

By showing that the defensive theory of consent had not prevailed in the trial of Hartley, the State was impermissibly allowed to discredit appellant's testimony concerning consent. Moreover, each case is to be tried on its own merits without an

effort to show a defendant's guilt through evidence of his associate's character. See *Gant v. State*, Tex.Cr.App., 513 S.W.2d 52. We find the court erred in overruling appellant's objection to the questions which revealed that Hartley was in prison.

The judgment is reversed and the cause is remanded.