# PD-0392&0393-15

PD-0392-15 & PD-0393-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/14/2015 11:50:18 AM
Accepted 4/15/2015 5:26:51 PM
ABEL ACOSTA
CLERK

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS
### AUSTIN, TEXAS

BREANNA SPENCER,
    APPELLANT

V.

                    NO._____
                    (COURT OF APPEALS NOS. 11-13-
                    00007-CR & 11-13-00008-CR; TRIAL
                    COURT NOS. CR21994 & CR21995)

STATE OF TEXAS,
    APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITION FOR DISCRETIONARY REVIEW
FROM THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CHIEF JUSTICE JIM R. WRIGHT, PRESIDING
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STAN BROWN
P.O. BOX 3122
ABILENE, TEXAS 79604
325-677-1851
FAX 325-677-3107
STATE BAR NO. 03145000
EMAIL: mstrb@aol.com

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

ATTORNEY FOR APPELLANT

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

BREANNA SPENCER,
    APPELLANT

V.

                    NO._____

                    (COURT OF APPEALS NOS. 11-13-00007-CR & 11-13-00008-CR; TRIAL COURT NOS. CR21994 & CR21995)

STATE OF TEXAS,
    APPELLEE

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Hon. Stephen Ellis
35th District Court
200 South Broadway
Brownwood, TX 76801

Stan Brown
Appellant's Attorney/ Appeal
P.O. Box 3122
Abilene, TX 79604

Michael Murray
District Attorney
200 South Broadway
Brownwood, TX 76801

Jimmy Stewart
Appellant's Attorney/Trial
101 South Park, Suite B
San Angelo, TX 76901

Ms. Elisha Bird
Assistant District Attorney
200 South Broadway
Brownwood, TX 76801

Breanna Spencer#1830927, Appellant
Woodman Unit
1210 Coryell City Rd
Gatesville, TX 76528

ii

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|

IDENTITY OF JUDGE, PARTIES, AND COUNSEL..........................ii

STATEMENT REGARDING ORAL ARGUMENT...........................v

STATEMENT OF THE CASE................................................................1

STATEMENT OF PROCEDURAL HISTORY...........................................2

## QUESTION PRESENTED FOR REVIEW

Did the Court of Appeals err by failing to recognize there was "no imaginable strategic motivation for trial counsel's failure" to object to testimony and argument that since a co-defendant was going to serve two and one-half years on a twenty year sentence, the jury should assess Appellant's punishment at forty years in order to insure she would be incarcerated at least five years? (IV R.R. at 118-119, 161) (V R.R. at 31-36)...................................................................................................3

PRAYER FOR RELIEF..................................................................9

CERTIFICATE OF SERVICE..........................................................9

CERTIFICATE OF COMPLIANCE..............................................10

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)..............3, 4

*Chester v. State*, 167 S.W.3d 935 (Tex. App.-Amarillo 2005, pet. ref'd)..5, 6

*Ex Parte Lane*, 303 S.W.3d 702 (Tex. Crim. App. 2009).......................5

*Ex Parte Rich*, 194 S.W.3d 508 (Tex. Crim. App. 2006).......................3

*Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004).....................7

*McClure v. State*, 615 S.W.2d 757 (Tex. Crim. App. 1981)...................6

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006)...............3, 4

*Taylor v. State*, 233 S.W.3d 356 (Tex. Crim. App. 2007)....................5, 6

*Villa v. State*, 417 S.W.3d 455 (Tex. Crim. App. 2013)................3, 4-5, 8

*Waters v. State*, 330 S.W.3d 368 (Tex. App.-Fort Worth 2010, pet. ref'd)...............................................................6-7

**CONSTITUTIONAL & STATUTORY PROVISIONS, RULES**   **PAGE**

U.S. CONST. amend. V..................................................................8

TEX. CRIM. PROC. CODE ANN. ART. 37.07, §4(c)....................5-6, 7

Tex. R. App. P. 9.4.......................................................................10

Tex. R. App. P. 66.3(c)....................................................................4

iv

# STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the QUESTION PRESENTED; whether the failure of trial counsel to object to evidence and argument about a co-defendant's expectation of receiving sufficient good-time credit to only serve two and one-half years on a twenty year sentence meant the jury must assess Appellant a sentence of forty years in order to insure she would serve at least five years, was ineffective assistance determinable from the Record; is an issue that merits further clarification for the bench and bar. Therefore, the usual give and take of oral argument would be useful for the Court in determining the parameters of when a single continuing error by trial counsel, who was not called upon to explain the action or omission, should still be considered ineffective assistance. Oral argument is essential in order to aid this Court's decisional processes by providing a more in-depth exploration of that issue.

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

BREANNA SPENCER,
APPELLANT

V.

NO._____

(COURT OF APPEALS NOS. 11-13-
00007-CR & 11-13-00008-CR; TRIAL
COURT NOS. CR21994 & CR21995)

STATE OF TEXAS,
APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PETITION FOR DISCRETIONARY REVIEW
FROM THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
EASTLAND, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATEMENT OF THE CASE

The indictments alleged Appellant knowingly possessed more than four but less than 200 grams of methamphetamine with intent to deliver, and possessed more than four ounces but less than five pounds of marijuana on January 21, 2012, in Brown County. (C.R. at 18).[1] Appellant pleaded guilty before the jury on December 4, 2012. (III R.R. at 1)(IV R.R. at 4). On December 5, 2012, the jury assessed her punishment at forty years TDCJ-ID, and the trial court sentenced her accordingly. (V R.R. at 47)(C.R. at 96). Notice of Appeal was filed January 4, 2013. (C.R. at 102). The Trial Court's Certification of Defendant's Right of Appeal was filed December 5, 2012. (C.R. at 93). Appellant seeks review of the decision of the Court of Appeals that affirmed the convictions.

---

[1] All Record references shall be to the Court of Appeals Cause No. 11-13-00007-CR, possession of more than four but less than 200 grams of methamphetamine with intent to deliver, as Appellant has already served her two year sentence in the other cause.

## STATEMENT OF PROCEDURAL HISTORY

Appellant presented two issues in her brief, and the Eastland Court of Appeals affirmed. *Spencer v. State*, _____ S.W.3d _____ 2015 WL 1089813 (Tex. App.-Eastland March 5, 2015)(Appendix). Appellant filed a motion for rehearing March 13, 2015, which was denied without written opinion March 26, 2015. This petition is due to be filed by April 27, 2015; it is therefore timely filed.

## QUESTION PRESENTED FOR REVIEW

Did the Court of Appeals err by failing to recognize there was "no imaginable strategic motivation for trial counsel's failure" to object to testimony and argument that since a co-defendant was going to serve two and one-half years on a twenty year sentence, the jury should assess Appellant's punishment at forty years in order to insure she would be incarcerated at least five years? (IV R.R. at 118-119, 161) (V R.R. at 31-36).

## ARGUMENT

It is imperative this Court reaffirm for the bench and bar while the generally preferred method of demonstrating ineffective assistance is postconviction habeas corpus, *Ex Parte Rich*, 194 S.W.3d 508, 513 at FN9 (Tex. Crim. App. 2006); while trial counsel's "performance is to be judged by the totality of the representation," *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); and while "the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance;" *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005); there are cases in which it is plain from the Record on direct appeal that trial counsel made a prejudicial decision for which there is no "imaginable strategic motivation." *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013). This is one of those cases. By its conclusion "the record is silent as to her trial counsel's strategy, if any, in choosing not to object to Goings's testimony and the prosecutor's argument about parole," *Spencer v. State*, _____ S.W.3d ____ _____ 2015 WL 1089813 at Slip Op. 12 (Tex. App.-Eastland March 5, 2015), the court below decided an important question of state and federal

3

law that conflicts with the foregoing applicable decisions of this Court. Tex. R. App. P. 66.3(c).

*Andrews v. State, supra*, 159 S.W.3d at 102 (Tex. Crim. App. 2005), accordingly, went on to say, "But, when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." (Failure to object to State's erroneous argument that the defendant's sentences could not be cumulated.)

*Robertson v. State, supra*, 187 S.W.3d at 484 explained that, "Nevertheless, in cases like this where appellant's self-defense claim rested almost entirely on his credibility, the weight of authority supports a holding that appellant's trial lawyer performed deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence because this evidence could serve no strategic value including demonstrating that appellant is not a liar."

As this Court has recently reminded us:

> While a single error will not typically result in a finding of ineffective assistance of counsel, it "is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance." Such was the case in *Vasquez v. State*. (*Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) In reviewing the two prongs of the *Strickland* test, we held that trial testimony properly raised the necessity defense and counsel's failure to request an instruction on the accused's sole defense fell below an objective standard of reasonableness. We explained:

> Because the evidence did raise the defensive

4

issue of necessity, and because appellant's counsel failed to request a jury instruction on the issue, the jury was precluded from giving effect to appellant's defense. That in itself undermines our confidence in the conviction sufficiently to convince us that the result of the trial might have been different had the instruction been requested and given.

Counsel's single failure to request a jury instruction on the issue of necessity when appropriate was therefore both deficient and prejudicial.

In the present case, there is no imaginable strategic motivation for trial counsel's failure to request a medical-care defensive instruction. *Villa v. State, supra,* 417 S.W.3d at 463.

More specifically, we must respectfully disagree with the conclusion of the court below at page twelve of the Slip Opinion, "the record is silent as to her trial counsel's strategy, if any, in choosing not to object to Goings's testimony and the prosecutor's argument about parole." *Villa v. State, supra,* 417 S.W.3d at 463-464 makes plain when "there is no imaginable strategic motivation for trial counsel's failure," as in this case, to object to evidence and argument since Jennifer Goings was going to do two and one-half years on a twenty year sentence, the jury should sentence Appellant to forty years in order to insure she would serve at least five years, review is necessary in order to uphold the mandate of *Villa*.

Furthermore, we respectfully suggest *Taylor v. State*, 233 S.W.3d 356 (Tex. Crim. App. 2007) did not overrule *Chester v. State*, 167 S.W.3d 935 (Tex. App.-Amarillo 2005, pet. ref'd). *Chester* is cited with approval in the more recent *Ex Parte Lane*, 303 S.W.3d 702, 718-719 (Tex. Crim. App. 2009). And the most egregious, contrary to the dictates of TEX. CRIM.

PROC. CODE ANN. ART. 37.07, §4(c) portion of the prosecutor's final argument cogently sums up our entire complaint here:

> Jennifer Goings. Jennifer Goings told you based on her role in this -- and we know where she is on our chart and we know where she started, under Randy Crawford. She was down here at the bottom, one of the people who was buying from Randy Crawford before she got brought up into this scenario by Breanna Spencer. Let's take her for example.
>
> Jennifer Goings got 20 years in prison. She told you that. She also told you that her projected release date at this point is January of 2015. She told you on that 20-year sentence that now she is working as a teacher's aid at the school there at the Woodman Unit there in Gatesville.
>
> As a result of her behavior in the penitentiary and her attempts at rehabilitation, she has been awarded good conduct time. So, now they have her projected release date as January of 2015, which means she will have served two-and-a-half years of a 20-year sentence. (V. R.R. at 34-35).

The clear implication for the jury from that foregoing "hypothetical scenario" is since Jennifer Goings will only be serving two and one-half years on a twenty-year sentence, the jury should sentence Appellant to forty years to insure that she serves at least five years. Both *Taylor v. State*, 233 S.W.3d 356 (Tex. Crim. App. 2007) and *Chester v. State*, 167 S.W.3d 935 (Tex. App.-Amarillo 2005, pet. ref'd) prohibit that.[2]

Neither does *Waters v. State*, 330 S.W.3d 368 (Tex. App.-Fort Worth 2010, pet. ref'd), extensively relied upon by the court below at pages nine-ten and twelve of the Slip Opinion, condone the sort of blatant demand the jury consider the accused on trial will receive the same proportionate amount

---

[2] It is also reversible error to present testimony about the disposition of a codefendant's case. *McClure v. State*, 615 S.W.2d 757 (Tex. Crim. App. 1981).

6

of good-time credit a co-defendant expects. "The prosecutor did not convey any information beyond what was properly contained in the charge, and he did not urge the jury to make a decision on punishment based on speculation of matters that were not properly before it." *Id.* at 375. Moreover, *Hawkins v. State*, 135 S.W.3d 72, 85 (Tex. Crim. App. 2004), cited by the court below with approval at page eight of the Slip Opinion, says in support of its conclusion of no abuse of discretion:

> The error was isolated and not egregious. Curative action was taken by the court with two immediate instructions, by the prosecutor with an apology and retraction, and in the jury charge with a correct statement of the law and an admonition not to determine how good time and parole law would apply to appellant. And appellant's possession of a deadly weapon in the present offense plus a string of prior convictions handily explains the jury's eighteen year sentence in this case. Under the circumstances, the trial court was reasonable in believing that its instruction to disregard was effective and that appellant suffered no prejudice from prosecutor's improper remark. We conclude that the trial court did not abuse its discretion in denying the request for a mistrial.

In other words, trial counsel in *Hawkins* did his job. He objected to any manner of allowing jury speculation regarding the application of the parole laws to the particular accused, Mr. Hawkins.

Here, on the other hand, trial counsel sat mute as the prosecutor proceeded to violate the dictates of TEX. CRIM. PROC. CODE ANN. ART. 37.07, §4(c) that concludes, "You are not to consider the manner in which the parole law may be applied to this particular defendant." And that admonition was a part of the Court's Charge to the Jury. (Slip Op. at 5-6).

7

*Villa, supra*, firmly stands for the proposition that when there is no plausible trial strategy for failure to object to such a flagrant urging the jury to consider how parole and the award of good-time credit would actually be applied to Appellant Breanna Spencer, as is demonstrably obvious here, then ineffective assistance should be found from the trial record alone. There was no possible valid trial strategy that can justify trial counsel's failures to object to both the testimony of Jennifer Goings, as well as the prosecutor's use of that testimony to argue to the jury Appellant had to receive a sentence of forty years in order to insure she would serve at least five.

And of course, with trial counsel still sitting idly by, the jury responded with exactly what the prosecutor unlawfully demanded, a sentence of forty years. (V R.R. at 47)(C.R. at 96). That was not right. Some imagined fear of alienating the jury by functioning as a Sixth Amendment Lawyer is simply not enough to justify speculation about viable "trial strategy" here. Appellant deserved more, the bench and bar of Texas deserve more, and the legacy and continuing vitality of *Villa* deserves more. Review must be granted.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court grant discretionary review and oral argument and, after full briefing on the merits, issue an opinion reversing and remanding this cause to the trial court for a new trial, or, alternatively, remand this cause to the Court of Appeals for a proper determination of ineffective assistance.

Respectfully submitted,

/s/ Stan Brown
STAN BROWN
P.O. BOX 3122
ABILENE, TEXAS 79604
325-677-1851
FAX 325-677-3107
STATE BAR NO. 03145000
EMAIL: mstrb@aol.com

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on this ____14th____ day of April, 2015, a true and correct copy of the above and foregoing Petition for Discretionary Review was emailed to Ms. Elisha Bird, Assistant District Attorney, Brown County Courthouse, Brownwood, TX 76801 at elishanbird@gmail.com; and to Ms. Lisa McMinn, State Prosecuting Attorney, at information@spa.texas.gov.

/S/ Stan Brown
STAN BROWN

## CERTIFICATE OF COMPLIANCE

I hereby certify that according to my computer program used to prepare the foregoing document, the word count, in accordance with Tex. R. App. P. 9.4, is ___1732___ words; and further certify that the brief is in Times 14-point type.

/S/ Stan Brown
STAN BROWN

# APPENDIX



## In The

# Eleventh Court of Appeals

### Nos. 11-13-00007-CR & 11-13-00008-CR

## BREANNA SPENCER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. CR21994 & CR21995**

### OPINION

Breanna Spencer entered open pleas of "guilty" to the first-degree felony offense of possession of methamphetamine, with intent to deliver, in an amount of four grams or more but less than 200 grams (No. 11-13-00007-CR) and to the state jail felony offense of possession of marihuana in an amount of five pounds or less but more than four ounces (No. 11-13-00008-CR). The trial court admonished Appellant, accepted her guilty pleas, and found her guilty of the offenses. The jury

assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for forty years for the methamphetamine offense and confinement in the State Jail Division of the Texas Department of Criminal Justice for two years for the marihuana offense. The trial court ordered that the sentences run concurrently. Appellant challenges her punishment in two issues. We affirm.

*Background Facts*

In late 2011, Brown County law enforcement officers received information that Appellant and her boyfriend, Thomas Berry, were trafficking narcotics in Brown County. At that time, Appellant and Berry became the subjects of an ongoing narcotics investigation. Appellant supplied methamphetamine to Jennifer Goings. On January 21, 2012, the officers received information that Appellant, Berry, and Goings planned to travel to Stephenville to purchase methamphetamine. The group traveled to Stephenville in a pickup and then returned to Brown County. Appellant was driving the pickup. Investigator Jason Benefield of the Brown County Sheriff's Office stopped the pickup. During a search of the pickup, officers found 13.36 grams of methamphetamine and 7.44 ounces of marihuana. The officers arrested Appellant, Berry, and Goings for possession of methamphetamine and marihuana. The seizure of the methamphetamine and marihuana led to the charges against Appellant in these causes.

As stated above, Appellant entered guilty pleas to the charged offenses. Appellant testified at the punishment phase of the trial. During her testimony, she admitted that she was a drug dealer in Brown County. Appellant said that she began selling methamphetamine and marihuana in August 2011. She admitted that she told a detective that she had distributed 1.8 pounds of methamphetamine and 40 pounds of marihuana in Brown County.

2

As a result of the officers' discovery of the methamphetamine and marihuana on January 21, 2012, Goings was charged with the offenses of engaging in organized criminal activity and possession of a controlled substance with intent to deliver. She pleaded guilty to the offenses. During Appellant's punishment hearing, Goings testified that she was serving a twenty-year sentence on the offenses. She said that she had been incarcerated on the charges since September 17, 2012. Goings said that she would first become eligible for parole in January 2015 and that her projected release date was January 5, 2015. Goings testified that she might not be released at that time and that she could spend up to twenty years in prison.

## *Issues on Appeal*

Appellant presents two issues for review. In her first issue, she contends that her trial counsel rendered ineffective assistance by failing to object to Goings's testimony about parole and to the prosecutor's argument about parole. In her second issue, Appellant contends that her counsel made cumulative errors throughout the proceeding that, taken together, denied her effective assistance of counsel.

## *Standard of Review*

To determine whether Appellant's trial counsel rendered ineffective assistance, we must first determine whether Appellant has shown that her counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for her counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). This standard applies to claims of ineffective assistance of counsel in both the guilt/innocence phase and the punishment phase of

3

noncapital trials. *Hernandez v. State*, 988 S.W.2d 770, 772–73 (Tex. Crim. App. 1999).

We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Counsel's deficiency must be affirmatively demonstrated in the record because the court must not engage in retrospective speculation. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). With respect to allegations of ineffective assistance of counsel, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813–14. The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel has not had an opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

*Evidence and Argument Related to Parole Eligibility*

In her first issue, Appellant contends that her trial counsel was ineffective for failing to object to Goings's testimony and the prosecutor's argument about parole. Appellant states that "[t]he egregious testimony from co-defendant Jennifer Goings that she was going to make parole on a twenty year sentence after

4

serving only two and one-half years, and final argument based on that urging the jury to assess Appellant's punishment at forty years to insure that she would serve at least five years, was all plainly objectionable."

Article 37.07, section 4(b) of the Code of Criminal Procedure requires the trial court to give the jury certain instructions that include information about parole eligibility. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (West Supp. 2014); *see* *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). In these causes, the court's charge contained the required instructions:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, she will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if she is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular

5

defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* CRIM. PROC. art. 37.07, § 4(b). The above instructions tracked the language required by Article 37.07, section 4(b). The instructions were found under heading no. 14 on pages 6 and 7 of the charge.

In the State's closing argument, the prosecutor requested the jury to assess Appellant's punishment at confinement for forty years. The prosecutor made the following statements:

> What I am asking you to put there is 40 years, 4-0. Now, let me tell you why. Let's go to Page 6. If all of you will flip to Page 6. Looking at number 14 on Page 6. This is very important. Okay? Number 14 on Page 6 is your parole laws. Y'all have heard some about that. When I have talked to you about this measurable amount of justice, about this amount where you can guarantee a certain amount of time she is going to [serve] in the penitentiary, to hit her over the head and make her realize this is really serious, let's look at number 14.

> And when I'm talking about this 40-year number that I'm asking you for, let's apply that here.

> Now, we can't say -- [defense counsel] is right. You can't say -- when you get back there, you're not supposed to sit there and guess how will this apply to her because you don't know how she is going to act in there. You can't predict that at this point. You don't know if she is going to be good or not good or all of those things. So, you can't sit there and say: "We think Breanna is going to get this much time off for good conduct time.["] You can't do that, but it does tell you very clearly that you can consider the existence of the law on that next page.

> So, let's look at what we're looking at, number 14. What it tells you there is two things. It tells you that, one, you can get time off for the award of good conduct time. Okay? That's what it talks about in the first paragraph. Look what it says there. It tells you that prison authorities may award good conduct time to a prisoner who exhibits what? Good behavior. That's what we want, right?

Two, diligence in carrying out work assignments. We want her to learn that because she won't work out here in the free world like the rest of us. She won't do it. Let's get her to do that.

And then next: "Attempts at rehabilitation."

Okay? Attempts to make herself a productive member of society. If she really wants to change, if she really wants to do better, here is your chance. And guess what? If you don't, then you can serve 40 years in prison.

Sounds like a pretty big incentive to make yourself reform and comply with what us as a society expect you to comply with. Right?

That's the hammer over her head. Let's make her get in there and do what she is supposed to do. If not, then she has really earned, based on her conduct at this point, every year of that 40-year sentence, but this gives her that opportunity.

What opportunity does it give her? If she does those things, it tells you that you can reduce the amount of time she is going to serve by good conduct. That's on top of then the next paragraph there or two down. The law also provides for parole. So, you've got good conduct time and you've got the parole. So, read what it tells you there. Because when [defense counsel] says she will actually have to serve one-fourth, that's not correct. Okay? Read this and make sure y'all understand it.

It says: Under the law in this case, if the Defendant is sentenced to a term of imprisonment, she will not become eligible for parole until the actual time served -- that's your actual time -- plus any good conduct time equals one-fourth. So, you follow me there? So, I can't tell you how to apply that to her, but we can use hypothetical situations.

So, let's take hypothetically if you have a person who is sentenced to 40 years in prison in our hypothetical scenario. We know one-fourth of 40 years is what, ten years, right? That's your actual time. What does it say, though? Actual time plus good conduct time.

7

And so, then if they work their prison assignments, they attempt at rehabilitate, they have good behavior, then you have the actual time plus then they get that good conduct time, adds up to the one-fourth.

So, under our hypothetical scenario if a guy receives 40 years for their behavior and their actual time plus good conduct time equals ten years, so let's say you served five. And then the prison authorities say: "Hey, you're doing good, you're rehabilitating, so we're going to give you good conduct time at two for one. So, now you've served five years, we're giving you five years of good conduct time and that equals ten, your one-fourth.["] So, you see how that works. You can't speculate on how she will do, but you see the existence of that and how it works.

So, let's talk about the evidence as it relates to that. Jennifer Goings. Jennifer Goings told you based on her role in this -- and we know where she is on our chart and we know where she started, under Randy Crawford. She was down here at the bottom, one of the people who was buying from Randy Crawford before she got brought up into this scenario by Breanna Spencer. Let's take her for example.

Jennifer Goings got 20 years in prison. She told you that. She also told you that her projected release date at this point is January of 2015. She told you on that 20-year sentence that now she is working as a teacher's aide at the school there at the Woodman Unit there in Gatesville.

As a result of her behavior in the penitentiary and her attempts at rehabilitation, she has been awarded good conduct time. So, now they have her projected release date as January of 2015, which means she will have served two-and-a-half years of a 20-year sentence.

*Analysis*

A prosecutor's argument that accurately restates the law given in the jury charge on parole and good conduct time is not improper. *Taylor*, 233 S.W.3d at 359; *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004). Nor is it improper for a prosecutor to ask the jury to take the existence of that law into consideration when assessing punishment. *Hawkins*, 135 S.W.3d at 84; *Walker v. State*, 406 S.W.3d 590, 600 (Tex. App.—Eastland 2013, pet. ref'd). A prosecutor

8

may properly explain to the jury how the parole eligibility rules set out in the charge work with respect to varying lengths of sentences. *Taylor*, 233 S.W.3d at 359.

As the trial court instructed, in assessing punishment, a jury "may consider the existence of the parole law and good conduct time." *See* CRIM. PROC. art. 37.07, § 4(b). The jury was also instructed that it was not "to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant" and that it was not "to consider the manner in which the parole law may be applied to this particular defendant." Any consideration by the jury "of whether the defendant would be awarded or would forfeit good-conduct time or how the parole laws would be applied to [her] would necessarily be based on speculation." *Waters v. State*, 330 S.W.3d 368, 374 (Tex. App.—Fort Worth 2010, pet. ref'd). The instruction that the jury is not to consider the manner in which the parole law may be applied to a particular defendant prohibits speculation on the issue by the jury.

With respect to Appellant, the prosecutor informed the jury that it could not consider how good conduct time and the parole law might be applied to her. The prosecutor stated that, "when you get back there, you're not supposed to sit there and guess how will this apply to her." The prosecutor said, "I can't tell you how to apply that to her, but we can use hypothetical situations." The prosecutor also stated that "[y]ou can't speculate on how she will do, but you see the existence of that and how it works." The prosecutor referred to Goings's testimony about her projected release date to explain how the parole eligibility laws contained in the court's charge worked.

In *Waters*, the prosecutor explained how the parole eligibility rules included in the court's charge applied in the context of a sixty-year sentence. *Waters*, 330 S.W.3d at 374–75. The court of appeals explained that, because the instructions

require a jury to disregard whether a particular defendant will receive or forfeit good conduct time and how the parole law might be applied to a particular defendant, "[a] jury, however, may not consider when, if ever, that defendant actually might be *awarded* parole." *Waters*, 330 S.W.3d at 374. However, in following the charge, a jury can properly determine "how long a term it wishes a defendant to serve before that defendant may become *eligible* for parole because the jury is instructed on good-conduct time and is furnished the formula for determining eligibility." *Id.* The *Waters* court stated that "[t]hese are distinct issues one of which is properly placed into the hands of jurors, to some degree, and the other of which is properly in the hands of officials in whose keep the defendant is placed after the jury has done its part in sentencing." *Id.* The court concluded that the prosecutor's remarks were proper because they accurately restated the law given in the jury charge. *Id.* at 375.

We agree with the sound reasoning of the *Waters* court. In these causes, the prosecutor's argument was limited to explaining when a defendant could become eligible for parole. The prosecutor essentially tracked the language in the court's charge on good conduct time and parole. He explained to the jury how the parole eligibility rules would work in the context of a hypothetical forty-year sentence. The prosecutor's explanation of how the parole eligibility rules would apply to a forty-year sentence was proper. *Taylor*, 233 S.W.3d at 359. The explanation "simply ensured that the jury understood the language set out in the instructions." *Id.*

In *Branch v. State*, 335 S.W.3d 893 (Tex. App.—Austin 2011, pet. ref'd), the court held that the defendant's trial counsel was ineffective by failing to object to the prosecutor's closing argument about parole. In *Branch*, the prosecutor stated that the defendant would "be done on life" in seven or eight years if he exhibited good conduct, that the defendant would "never" serve as many as fifteen or twenty

10

years if given a life sentence, and that the defendant "would be out even quicker" if the jury gave him a thirty- or forty-year sentence. *Branch*, 335 S.W.3d at 907. The court concluded that the prosecutor's argument was improper because "the prosecutor did not state that [the defendant] would be *eligible* for parole in a certain number of years, but rather stated that [he] would be *out of prison* in that amount of time." *Id.* The court stated that "[t]he prosecutor's statements were improper because they went beyond merely explaining the parole-law portion of the jury charge and because they were also an inaccurate statement of the law." *Id.*

This case is distinguishable from *Branch*. Here, the prosecutor accurately stated the law and focused on eligibility for parole in his argument; the prosecutor did not state that Appellant would be out of prison on parole in a certain amount of time. The prosecutor did not make any improper statements as to when Appellant would be awarded parole.

Appellant relies on *Chester v. State*, 167 S.W.3d 935 (Tex. App.—Amarillo 2005, pet. ref'd), to support her contention that the prosecutor's argument was improper. In that case, the prosecutor stated that, "[i]f there is a 20 year sentence, [the defendant] will not become eligible for parole until his actual time served, plus whatever credit they give him for good time served, equals 5 years, okay. That's what you know for sure." *Chester*, 167 S.W.3d at 936. The defendant lodged an objection to the prosecutor's statements on the ground that they constituted improper jury argument. The trial court overruled the objection. *Id.* On appeal, the defendant argued that the trial court erred in overruling his objection to the prosecutor's argument. The State conceded error. *Id.* The court held that the prosecutor's argument was harmful, and it remanded the case to the trial court for a new punishment hearing. *Id.* at 937–38.

11

*Chester* was decided before the Court of Criminal Appeals issued its opinion in *Taylor*. As the Fort Worth court explained in *Waters*, the *Chester* court's reasoning "appears not to have survived" the decision of the Court of Criminal Appeals in *Taylor*. *Waters*, 330 S.W.3d at 372. The prosecutor's remarks in *Taylor* were similar to the prosecutor's remarks in *Chester*. In *Taylor*, the Court of Criminal Appeals concluded that the prosecutor's explanations as to how the parole eligibility rules contained in the charge worked with respect to forty-, sixty-, and seventy-five-year sentences were not improper. *Taylor*, 233 S.W.3d at 358–59. We conclude that the prosecutor's statements in *Chester*, when considered in light of *Taylor*, are not improper.

In the current causes before us, like in *Taylor*, the prosecutor's argument accurately stated the law given in the jury charge. Therefore, we conclude that the argument was proper. Because the State's argument was proper, Appellant's trial counsel's failure to object to it cannot constitute deficient performance. *See Walker*, 406 S.W.3d at 600–01.

Additionally, Appellant's ineffective-assistance claims are undeveloped in the record. Appellant did not raise her claims in a motion for new trial. Accordingly, the record is silent as to her trial counsel's strategy, if any, in choosing not to object to Goings's testimony and the prosecutor's argument about parole. On this record, even if the argument was improper, we could not conclude that trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440. Thus, Appellant could not overcome the presumption that her counsel rendered effective assistance. *See Mata v. State*, 226 S.W.3d 425, 430–31 (Tex. Crim. App. 2007).

Appellant has not shown that her trial counsel rendered ineffective assistance by failing to object to Goings's testimony and the prosecutor's argument about parole. Appellant's first issue is overruled.

12

*Additional Ineffective-Assistance Allegations*

In her second issue, Appellant argues that her trial counsel made numerous errors throughout the proceeding that, when combined with the errors raised in her first issue, resulted in the denial of her right to effective assistance of counsel. Appellant contends that her trial counsel rendered ineffective assistance in the following respects: (1) failing to undertake an effort to rehabilitate a potentially favorable juror during voir dire; (2) failing to object on Confrontation Clause[1] grounds to portions of Investigator Benefield's testimony; (3) failing to object on Confrontation Clause grounds to portions of Goings's testimony; (4) failing to object on Confrontation Clause grounds to the admission of the Department of Public Safety Laboratory report that related to the seized methamphetamine and marihuana; (5) failing to object to Investigator Benefield's testimony that a dog's alert on a vehicle gives officers probable cause to search the vehicle; (6) failing to object to the admission of a motion to revoke Appellant's prior probation; and (7) failing to object on speculation grounds to the admission of four exhibits that purported to show the amounts of methamphetamine and marihuana that Appellant distributed in Brown County.

We presume that trial counsel's conduct was motivated by sound trial strategy when, as here, counsel's reasons for engaging in the challenged conduct do not appear in the record. *Garcia*, 57 S.W.3d at 440. As stated above, on a silent record, we will not conclude that trial counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* In these causes, the record does not show that Appellant's trial counsel engaged in such conduct. Instead, the record supports the conclusion that Appellant's counsel may have developed a sound trial strategy with respect to all of the challenged actions.

[1]*See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

13

Appellant contends that her counsel was ineffective because he did not attempt to rehabilitate Juror No. 4 during voir dire. Juror No. 4 said that she had raised a nephew who had been convicted of two marihuana offenses and placed on probation for the offenses. Juror No. 4 felt that the circumstances surrounding her nephew's marihuana cases would affect her ability to be a fair and impartial juror. She also said that her nephew had been treated "a little bit" unfairly. The trial court granted the State's motion to excuse Juror No. 4 without objection. Appellant's trial counsel may have believed that Juror No. 4 blamed drug dealers, such as Appellant, for her nephew's problems and would, therefore, be unfavorable to Appellant. If counsel held this belief, he may have developed a sound trial strategy to not attempt rehabilitation of Juror No. 4.

Appellant contends that her trial counsel should have objected to the following portions of Investigator Benefield's testimony on Confrontation Clause grounds: (1) "[W]e received information that [Appellant] and [Berry] and [Goings] were all [en] route to Stephenville to purchase a quantity of methamphetamine and possibly marijuana from Boss"; (2) "Ultimately, Martin, The Boss, was arrested by the federal authorities. . . . He agreed to speak with me. And he told me that [Appellant] and Berry had, right after their arrest, traveled to San Saba and met with him . . . and had warned him that we were looking to set him up"; and (3) "We got information that [Appellant and Berry] were continuing to use methamphetamine." Appellant also contends that her counsel was ineffective by failing to object, on Confrontation Clause grounds, to Goings's testimony that Appellant and Berry "were the supplier for Randy Crawford" because "[Crawford] had told [her] about it."

The complained-of testimony by Investigator Benefield and Goings related to the issue of whether Appellant distributed methamphetamine in Brown County. Appellant admitted that she distributed methamphetamine. Appellant's trial

14

counsel developed a reasonable trial strategy for Appellant to plead guilty to the offenses, accept responsibility for her actions, acknowledge her wrongdoing, and request the jury to place her on probation for the offenses. Appellant's acceptance of responsibility for her actions could be viewed positively by the jury in assessing her punishment. Trial counsel may have decided not to object to Investigator Benefield's testimony and Goings's testimony as part of a strategy to appear completely open and honest with the jury and may have believed that raising objections to the testimony would prejudice the jury against Appellant.

Appellant also contends that her counsel rendered ineffective assistance by failing to object on Confrontation Clause grounds to the admission of the DPS Laboratory Report. The officers sent the substances that were seized on January 21, 2012, to the DPS lab for testing. The report showed that the substances were 13.36 grams of methamphetamine and 7.44 ounces of marihuana. Because Appellant pleaded guilty to the charged offenses, the nature and weight of the tested substances were not in issue. Appellant's counsel may have believed that objecting to the admission of the lab report would make the jurors believe that Appellant was hiding something from them.

Appellant also contends that her trial counsel was ineffective for failing to object to Investigator Benefield's testimony that a dog alert on a vehicle gives officers probable cause to search the vehicle. Appellant asserts that this testimony was an improper legal conclusion and, therefore, inadmissible. Appellant's counsel may have developed a sound trial strategy not to object to this testimony because the legality of the stop was not in issue and may have believed that an unnecessary objection would alienate the jury.

Appellant had previously been on misdemeanor community supervision for a DWI offense. Appellant's community supervision had been revoked. Appellant contends that her trial counsel rendered ineffective assistance for failing to object

15

to the admission of the motion to revoke that was filed in connection with her earlier community supervision. The motion to revoke alleged that Appellant had violated the terms of her community supervision by failing to report to the community supervision department; failing to attend a required program; failing to pay court costs, a fine, and probation fees as required; failing to complete community service as ordered; and failing to attend a required DWI class. Appellant requested the jury to place her on community supervision in these causes. Appellant's trial counsel may have believed that it would be beneficial to Appellant for the jury to know details about community supervision, such as the nature of the terms and conditions that would be imposed on Appellant if she received community supervision and the type of conduct that could lead to a revocation of her community supervision. If Appellant's counsel had this belief, he may have developed a sound trial strategy not to object to the admissibility of the motion to revoke.

Appellant also contends that her counsel was ineffective for failing to object to the admission of State's Exhibit Nos. 18, 19, 22, and 23. Appellant contends that the exhibits were inadmissible because they were based on speculation. The State offered these documents to show the amount of methamphetamine and marihuana that Appellant distributed in Brown County. Investigator Benefield prepared State's Exhibit Nos. 18 and 19. They were based on information that Investigator Benefield received during his investigation of Appellant and Berry. Investigator Benefield said that Exhibit Nos. 18 and 19 contained "very conservative" estimates of the amount of methamphetamine and marihuana that Appellant distributed. Exhibit No. 18 showed that Appellant distributed a total of 168 grams (or six ounces) of methamphetamine over a six-month period. Exhibit No. 19 showed that Appellant distributed twelve pounds of marihuana.

16

Appellant testified that she told a detective that she had distributed 1.8 pounds of methamphetamine and 40 pounds of marihuana in Brown County. During rebuttal, the State offered Exhibit Nos. 22 and 23, which were based on Appellant's testimony. As such, they were not based on speculation. Appellant's trial counsel may have reasonably believed that objecting to the earlier exhibits that contained much lower estimates would lead to the admission of additional evidence showing that Appellant distributed higher amounts of methamphetamine and marihuana than the amounts reflected in those exhibits. Counsel could have been concerned that lodging an objection would bring unnecessary attention to the issue and would make it appear that Appellant was attempting to hide something from the jury.

On this record, Appellant cannot overcome the strong presumption of reasonable assistance. *Thompson*, 9 S.W.3d at 814. Appellant's second issue is overruled.

### This Court's Ruling

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

March 5, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

17



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Breanna Spencer,

Vs. No. 11-13-00007-CR

The State of Texas,

* From the 35th District
  Court of Brown County,
  Trial Court No. CR21994.

* March 5, 2015

* Opinion by Bailey, J.
  (Panel consists of: Wright, C.J.,
  Willson, J., and Bailey, J.)

This court has inspected the record in this cause and concludes that there is no error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Breanna Spencer,

Vs. No. 11-13-00008-CR

The State of Texas,

* From the 35th District
Court of Brown County,
Trial Court No. CR21995.

* March 5, 2015

* Opinion by Bailey, J.
(Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.)

This court has inspected the record in this cause and concludes that there is no error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.