**Thomas FRIESEL, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

No. 04–95–00169–CR.

Court of Appeals of Texas,
San Antonio.

April 17, 1996.

Rehearing Overruled May, 17, 1996.

Discretionary Review Refused Oct. 9, 1996.

Kimberly E. Young, San Antonio, for appellant.

Catherine Torres–Stahl, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Thomas Friesel was convicted of capital murder and sentenced to life in prison. He appeals on two points of error: (1) the trial court erred in altering the indictment on the day of trial; and (2) the trial court erred in its handling of a jury verdict that found Friesel guilty of capital murder and all charged lesser-included offenses. We hold that the trial court's alteration of the indictment reflected a proper abandonment of surplusage, rather than an amendment, and that Friesel waived his second complaint. We therefore affirm the judgment.

### FACTS

Timothy Michael Redford, a student at San Antonio College, worked part-time and lived at Grandpa's Paint Ball Adventure.[1] On April 26, 1992, Redford was found dead on the couch in the Grandpa office. He had been shot in the face and head multiple times with a 9 mm Ruger pistol. Several of the

owner's guns were also missing from the premises.

Initially, no suspects were identified. In July of the following year, however, the murder weapon was found during a routine inspection of pawn shop tickets. The police traced the ticket to the gun's previous owner, Phillip Charo, who said he had purchased the gun from Jonathan Granados. Charo also indicated that Granados had told him that he had killed Redford. When the police questioned Granados, however, he indicated that it was in fact Friesel who had murdered Redford. But when the police later questioned Friesel, he told the police that Granados had done the shooting.

Granados and Friesel were indicted for capital murder in Cause Nos. 94–CR–1541 and 94–CR–2039, respectively. After the State set both cases for trial in February 1995, the trial court heard and granted Granados' motion to sever and separately try the co-defendants. The indictment charged Friesel as follows:

### COUNT I
#### PARAGRAPH A

26TH day of APRIL, A.D., 1992, THOMAS FRIESEL, JR., did then and there intentionally and knowingly cause the death of an individual, namely: TIMOTHY REDFORD by SHOOTING TIMOTHY REDFORD WITH A DEADLY WEAPON, NAMELY: A HANDGUN, and THOMAS FRIESEL JR. did then and there intentionally cause the death of TIMOTHY REDFORD, while in the course of committing and attempting to commit the offense of BURGLARY OF TIMOTHY REDFORD;

#### PARAGRAPH B

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 26th day of April, A.D., 1992, and anterior to the presentment of this indictment, in the County of Bexar and State of Texas,

---

1. Paint ball is an adventure sport in which the players, organized in teams, dress up in protective gear and shoot one another with paint-shoot-ing guns. The object is to eliminate all members of the opposing team.

THOMAS FRIESEL, JR., did then and there intentionally and knowingly cause the death of an individual, namely: TIMOTHY REDFORD by SHOOTING TIMOTHY REDFORD WITH A DEADLY WEAPON, NAMELY: A HANDGUN and JONATHAN EDWARD GRANADOS then and there intentionally caused the death of TIMOTHY REDFORD, while in the course of committing and attempting to commit the offense of ROBBERY of TIMOTHY REDFORD;

On the morning of trial, the State made an oral motion to "change" paragraph B of the indictment, and the following conversation ensued among Mr. Kopp, the assistant district attorney; the trial judge; and Mr. Granados, Friesel's counsel:

MR. KOPP: The second motion deals with count one, paragraph B of the indictment. The Defendant is referred to as Johnathan Edward Granados instead of Thomas Friesel, Jr. We would move that the Court would suggest the true name of the Defendant to reflect the name on the indictment, change on the indictment.

MR. GRANADOS: Your Honor, we are going to object to that. The State has had over two years—excuse me, almost three years to prepare for this case. The Court signed this scheduling order that was drawn up by the State regarding amendments to the indictment.

THE COURT: This is not a situation—this is not a situation where the Defendant uses a different name. This is a situation where you screwed up.

MR. KOPP: That's correct, Your Honor.

THE COURT: Because you put the co-defendant's name in the indictment.

MR. KOPP: That's correct.

THE COURT: So, in situations where the Defendant has a different name, then, yes, he can suggest it, or if he is known by a different name, but in this situation, it is not something that the defendant ever did, a name he used or anything like that.

MR. KOPP: That is correct, Your Honor. I do have a case where it deals with they didn't include the correct last name, and again it was a mistake that the State

had made. It wasn't an alias situation, and the Court said that that is not an amendment because it comes under a different portion—is not an amendment because it comes under a different portion of the code.

THE COURT: Mr. Granados, what do you have to say?

MR. GRANADOS: Your Honor, in the case of Wynn versus State that the State is citing, the names Emmitt James and Emmitt James Wynn are clearly referring to the same person, and there was never any doubt in anyone's mind who was being referred to.

In this case the State has named the co-defendant Johnathan Edward Granados, and unless the State can show that the Defendant in this case has ever used the same or any similar name, we believe it is clearly a mistake.

In addition, striking the clause following the word "handgun" in paragraph B, Johnathan Edward Granados did then and there intentionally cause the death of Timothy Redford, et cetera, would still leave an offense. It does not render the paragraph void. We would ask the Court to strike that as surplus since the State cannot prove that, and to leave the remainder of paragraph B charging the offense of murder.

THE COURT: Yeah, but isn't the theory that they are going to be co-defendants, that they are going to be accomplices or parties?

MR. KOPP: That's correct, Your Honor.

MR. GRANADOS: The Penal Code says while the Defendant was in the act of committing or attempting to commit, not someone else.

THE COURT: But you can be a party to that.

MR. KOPP: Alternatively, your Honor, if the Court rules against us on the name change and consistent with what Counsel for the Defense has suggested, the State would request that the Court—rather the State would abandon the allegation Johnathan Edward Granados and nothing else from count one, Paragraph B.

Again, I have cases dealing with the abandonment issue that is strictly on point.

THE COURT: Well, if you read it without—if you just abandon Johnathan Edward Granados, then you have the right name at the beginning of this paragraph.

MR. KOPP: That's correct. The second time any name is mentioned is surplus.

THE COURT: And there is no suggestion that Thomas Friesel, Jr. is not his correct name, is there?

MR. KOPP: None from the State. That is our belief.

MR. GRANADOS: That is also our contention.

THE COURT: Well, I am going to let you change it. It is stupid. It should have been caught two years ago.

MR. KOPP: Yes, Your Honor.

MR. GRANADOS: Your Honor, for the record we would object to any amendment at this time. We would ask the Court, once again, to strike the aggravating clause of paragraph B in count one.

THE COURT: No, I won't do that. The name Johnathan Edward Granados will be omitted and the name Thomas Friesel, Jr. will be inscribed on the face of the indictment as the true name of the Defendant, because if they abandon them, it is the same as if reading that, it is the same as if it were included. . . .

The trial court then interlineated the indictment to strike Granados' name and insert Friesel's in the last clause in paragraph B, and the case proceeded to trial.

At the conclusion of the evidence, the trial judge granted Friesel's motion for acquittal as to paragraph A because there was no evidence that Friesel entered Grandpa's without Redford's consent, hence no burglary. She overruled Friesel's reurged objection to the alteration in paragraph B, however, because she "[did] not construe this to be an amendment" and submitted a capital murder (robbery) charge to the jury. Ultimately, the jury found Friesel guilty of capital murder and assessed his punishment at life in prison.

## ABANDONMENT V. AMENDMENT

■ In his first point of error, Friesel argues that the trial court erred in "amending" paragraph B of the indictment to delete Granados' name and add Friesel's over his objection. Friesel argues the "amendment" substantially prejudiced his rights because, absent the final clause, paragraph A charged only murder, rather than capital murder. We disagree that the alteration was an "amendment."

Article 28.10 of the Texas Code of Criminal Procedure provides that "[a]n indictment . . . may not be amended over the defendant's objection as to form or substance if the amended indictment . . . charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989). Friesel argues that the trial court's alteration of the indictment in this case constitutes an "amendment." The State, on the other hand, argues that the alteration was a name change within article 26.08,[2] citing *Kelley v. State*, 823 S.W.2d 300, 302 (Tex.Crim.App.1992), and *Wynn v. State*, 864 S.W.2d 539, 540 (Tex.Crim.App.1993).

In *Kelley*, during a pretrial hearing on May 3, the trial court ascertained that the defendant's true name was not Frank Ronnie Kelly, as stated in the indictment, but Frank Kelley, III. *Kelley*, 823 S.W.2d at 301. On the day of trial, May 5, after empanelment of the jury but before Kelley entered his plea, the trial court corrected Kelley's name on both the indictment and the docket sheet. *Id.* Only then did Kelley object. *Id.* On appeal, Kelley argued that this alteration constituted an amendment within the scope of article 28.10 and therefore entitled him to a ten-day continuance. *Id.* at 302. The

---

**2.** Article 26.08 provides:

If the defendant, or his counsel for him, suggests that he bears some name different from that stated in the indictment, the same shall be noted upon the minutes of the court, the indictment corrected by inserting therein the name of the defendant as suggested by himself or his counsel for him, the style of the case changed so as to give his true name, and the cause proceed as if the true name had been first recited in the indictment.

TEX.CODE CRIM.PROC.ANN. art. 26.08 (Vernon 1989).

court disagreed, holding that "[t]he name change of the defendant does not constitute an amendment as that term is perceived by article 28.10.... Article 26.08 ... controls. The act of changing the name of a defendant is a ministerial act." *Id.; see also Wynn v. State*, 864 S.W.2d 539, 540 (Tex.Crim.App. 1993) (changing defendant's name in body of indictment from "Emmett James a/k/a James Jackson" to defendant's true name, "Emmett James Wynn a/k/a James Jackson," as stated in caption of indictment, was name change within article 26.08, rather than amendment within article 28.10).

Friesel argues that *Kelley* and *Wynn* are distinguishable because they involve changing an incorrect name to a correct name, not changing a correct co-defendant's name to the defendant's name, as the trial court did in this case. We agree. *Kelley* and *Wynn* simply do not address the situation here. Nor does any other case that we have found. We disagree, however, that the name change cases do not offer us guidance in this case. Rather, we find the necessary guidance in a case cited by Friesel for the proposition that the trial court must physically alter the indictment to effectuate an amendment—*Ward v. State*, 829 S.W.2d 787 (Tex.Crim.App. 1992).

Ward was charged with "unlawfully, knowingly, and intentionally enter[ing] a building not then and there open to the public, without the effective consent of SETH HALLER, the owner thereof, with the intent to commit theft[.]" *Id.* at 788. On the day of trial, however, the State moved under article 28.10 to amend the indictment to reflect that the complaining witness was not Seth Haller but Steve Scott. *Id.* Over the defendant's objection, the trial court permitted the amendment, but he failed to interlineate the indictment. *Id.* At trial, Steve Scott testified that he was the manager of the Richardson Heights Radio Shack, while Seth Haller was the manager of the Campbell Road Radio Shack. *Id.* at 788–89. The trial court, as the trier of fact, then found Ward guilty and assessed punishment at twenty-five years in prison. *Id.* at 789.

On appeal, Ward argued, and the court held, that because the trial court failed to interlineate the indictment, it was not amended, and the evidence was legally insufficient to support his conviction for burglarizing a building owned by Seth Haller, as set forth in the indictment. *Id.* at 789, 795. To resolve the issue of whether interlineation was required, the court referred first to the common and ordinary, as well as legal, dictionary definitions of "amend," *i.e.*, "to alter" and "[t]o change, correct, revise." *Id.* at 791 (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY (G.C. Merriam Co.1977) and BLACK'S LAW DICTIONARY (4th ed. 1968)). Plainly, however, not every alteration, correction, change, or revision constitutes a prohibited amendment, as evidenced by the permitted name changes in *Kelley* and *Wynn*. The court went on, however, to consider the legislative history of article 28.10 and specifically the following comment by Ralph Petty, an assistant district attorney in Bell County:

> [Y]es, obviously, yes. Except that with the companion bill to this, for a constitutional amendment [SJR 16], allowing the courts to do just exactly that. And without that companion bill there is going to be no amendment to the substance of an indictment because it is no longer an act of the grand jury but is an act of the prosecutor or the court amending the bill. So you have to have this SJR 16, or else you are not going to be able to contemplate any change in that indictment. ***You can delete therefrom, you can strike surplusage, but you can never add to an indictment. And the bill contemplates adding an element of the offense when you drop one. And that brings up another issue.***

*Ward*, 829 S.W.2d at 791–92 (emphasis added). The concerns underlying article 28.10 are thus the separation of powers vis-a-vis the grand jury, the prosecutor, and the court, as well as the substantial due process right of the defendant to ascertain the crime with which he or she is charged from the face of the indictment. Thus the court found "that the legislators' primary concern can be fairly summarized as follows: What type [of] substantive errors could be corrected in an indictment without thwarting the will of the grand jury or violating an accused's constitu-

tional right to grand jury indictment in a felony cause?" *Id.* at 792.

From the perspective afforded by *Ward,* we can more accurately assess the alteration in this case. Is it more like the alterations of substance and form contemplated by the legislature's use of the word "amendment"? Or is it instead more like a purely ministerial name change, such as that evidenced by the name changes in *Kelley* and *Ward?* We hold that it is the latter.

As both counsel agreed at oral argument, and as the trial judge noted during her conversations with trial counsel, the State could properly have abandoned Granados' name as the stated subject in the last clause of paragraph B as surplusage; in that event, Friesel's name, as the subject of the first clause, would simply be the unstated but understood subject of the second clause. *See Davis v. State,* 532 S.W.2d 626 (Tex.1976). The issue is thus whether the trial court may interlineate an indictment to reflect the understood subject of a clause. We believe the resolution of this issue is plain. When viewed through the prism of article 28.10's legislative history, as well as article 26.08 and the name changes in *Kelley* and *Wynn,* the trial court's interlineation of Friesel's name in paragraph B was not an "amendment" within the scope of article 28.10 but a purely ministerial correction. Both before and after the alteration, Friesel was charged in both paragraphs A and B with capital murder. We therefore overrule Friesel's first point of error.

### HANDLING OF THE JURY'S VERDICT

■ In his second point of error, Friesel argues that the trial judge erred in sending the jury back to deliberate with a supplemental charge after receiving the jury's verdict finding Friesel guilty of not only capital murder but also all charged, lesser-included offenses. The State counters that Friesel waived the claimed error by expressly asking the trial judge to do precisely what she did, as evidenced by the following excerpt:

THE COURT: .... It is my feelings [sic] that because he has been found guilty of capital murder, and not acquitted of that specifically in the verdict, that the other two are surplusage, and consequently a verdict of capital murder can be returned.

However, I'm more than willing—I've never had a jury come back and find guilty on all the lessors [sic] also—

....

MR. GRANADOS: And then I would ask that they be instructed to continue with their deliberations, because the verdicts that have been returned are inconsistent with the Charge of the Court.

....

THE COURT: Are you familiar with any case law on this? I've never seen this situation arise where all the verdict forms have been returned—

MR. THORNBERRY: Neither have I. On the cases on informal verdict, I think there are cases where the Judge instructs them that in the present form, the verdict cannot be accepted, and to go back and deliberate further, and return a verdict which conforms to the Charge.

THE COURT: I can do that.

MR. THORNBERRY: Which I think is essentially what he's asking.

MR. GRANADOS: That's what we requested.

THE COURT: Do you want me to do this in writing?

MR. GRANADOS: Yes.

THE COURT: All right.

(WHEREUPON, a short recess was had)

THE COURT: As request[ed] by counsel, I have prepared a Supplemental Charge that states the following: "Members of the Jury: You are instructed to resume deliberation and to return a verdict in conformity with the Charge. Respectfully submitted."

MR. GRANADOS: No objection.

We agree that Friesel waived the claimed error. *See Reese v. State,* 773 S.W.2d 314, 317 (Tex.Crim.App.1989); Tex.R.App.P. 52(a).

Accordingly, Friesel's second point of error is overruled, and the judgment is affirmed.