**Affirmed and Opinion filed October 8, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-18-00685-CR

---

### MIRNA SALAS ABBOTT, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 207th District Court
### Comal County, Texas
### Trial Court Cause No. CR2017-585

---

### O P I N I O N

Appellant Mirna Salas Abbott appeals her conviction for possession with intent to deliver a controlled substance in an amount of four grams or more but less than 200 grams. Though appellant pleaded "guilty" to the charged offense, on appeal she complains that her trial counsel rendered ineffective assistance in (1) negotiating and advising appellant to sign a plea agreement in which she waived various rights but gained nothing and (2) apprising the State of a "fatal variance" in the original indictment before appellant pled "guilty." She also asserts the trial

court violated her due-process rights at the plea hearing by (1) failing to inquire whether appellant was satisfied by her trial counsel's representation and whether she wanted to represent herself and (2) physically altering the original indictment to effect an amendment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2017, appellant was charged by indictment with the offense of knowingly possessing with intent to deliver a controlled substance having an aggregate weight, including any adulterants or dilutants, of four grams or more but less than 200 grams. The original indictment identified that controlled substance as "[m]ethamphetamine." The indictment also contained an enhancement paragraph alleging a previous felony conviction. Appellant later pleaded "guilty."

### The Plea Papers

Appellant signed and initialed each page of the plea papers entitled "Admonishments, Voluntary Statements, Waivers, Stipulations, Judicial Confession & Plea Bargain Agreement" (the "Plea Papers"). In the admonishment section of the Plea Papers a checked box indicates appellant's acknowledgment of the punishment range for a first-degree felony for a repeat offender—imprisonment for life or a term of not more than 99 years or less than 15 years, plus a fine not to exceed $10,000. Another admonishment warns that appellant, who indicated elsewhere in the Plea Papers that she was not a United States citizen, could be subject upon conviction to deportation, refusal of re-admission, and denial of citizenship.

In a section entitled "Voluntary Statements," the Plea Papers contain statements by appellant that she understands the minimum and maximum punishment provided by law for this offense and that she is freely, knowingly, and

voluntarily waiving her right to a jury trial. In a section entitled "Waivers," appellant states that she waives (1) her right to a jury trial, (2) her rights to remain silent and to confront or cross-examine witnesses against her during the guilt/innocence phase of trial, (3) her right to file a motion for new trial as to guilt or innocence, and (4) her right to appeal the trial court's judgment as to guilt or innocence (the "Waiver of Appeal"). In a section of the Plea Papers entitled "Stipulations and Judicial Confession," appellant judicially confesses that she committed each element of the charged offense, and states that she voluntarily enters a plea of guilty. Appellant also states that she has read the Plea Papers and has discussed them fully with her attorney. Appellant states that she understands the Plea Papers, is "aware of the consequence[s] of her plea, and is satisfied that she has been effectively represented."

In the Plea Papers appellant agrees (1) to plead "guilty" to the offense of possession with intent to deliver a controlled substance having an aggregate weight of four grams or more but less than 200 grams, (2) not to ask for deferred adjudication, and (3) to plead "true" to the enhancement paragraph in the indictment. A handwritten notation in the Plea Papers recites that "This is an open plea of guilty and true to the enhancement paragraph."

In the part of the Plea Papers in which the State could have given consideration by recommending a sentence or agreeing to prosecute appellant only on a lesser-included offense, the State did not check any of the first eleven items available in the form; instead, the State checked "[o]ther" and inserted the following text in the blank lines:

> This is an open plea of guilty and true to the enhancement paragraph. [Appellant] shall not ask for and shall not receive a deferred adjudication. Therefore, [appellant] shall be sentenced to a term not less than 15 years and not more than 99 years or life and a fine not to

3

exceed $10,000.

The inserted language contains no reference to any consideration given by the State. Below this language appears the statement, "The *above* terms constitute our agreement, and there are no agreements not set forth *above*."[1] (the "End-of-Agreement Sentence"). Significantly, the wording on which the State relies as consideration for the Waiver of Appeal falls below the End-of-Agreement Sentence and above the signature line for the assistant district attorney:

> I hereby join, consent to and approve of: (1) the stipulations of evidence pursuant to Art. 1.15, C.C.P.; and (2) the waiver of jury trial pursuant to Art. 1.13, C.C.P., conditioned on the Court accepting this Plea Agreement and sentencing the Defendant in accordance with this Plea Agreement.

Under the unambiguous language of the Plea Papers, the above-quoted words were not part of the agreement between appellant and the State because these words fell below the End-of-Agreement Sentence.

### *The Plea Hearing*

At the plea hearing, the trial court stated that although appellant had reached an agreement with the State, the trial court could reject the agreement. The trial court stated that if it rejected the agreement, nothing appellant said or did at the hearing could be used against her, but if the trial court followed the agreement, appellant would not be allowed to withdraw her plea. Appellant said she understood. The trial court inquired and received confirmation from appellant and appellant's trial counsel that appellant understood the proceedings. Appellant indicated she was not a citizen and the trial court explained the potential immigration consequences associated with her plea. Appellant confirmed that she understood these possibilities. The trial court also explained the punishment range

---

[1] (emphasis added).

4

for the offense and appellant again indicated she understood.

The trial court explained that appellant had the option to call witnesses before a jury and hold the State to its burden of proof, but "by proceeding here today [there would be] no jury, no witnesses" and appellant would be resolving her case with "just [the Trial Court] and paperwork." Again, appellant confirmed she understood. The trial court told appellant "in effect" she also was waiving her right to remain silent as to the charges and allegations against her. The trial court admonished appellant that in proceeding this way appellant would be admitting to facts "sufficient to sustain a conviction against [her]." Appellant confirmed that she understood. The trial court then stated that "[t]his would basically be an open plea to that range of punishment, 15 years in the penitentiary up to 99 years or life, again, understanding that no probation of any kind is an option for the Court." Appellant affirmed that she understood and that she had not been promised anything else or threatened in any way.

Just as appellant was about to make her plea, her counsel interjected, to notify the trial court that the indictment alleged that appellant possessed methamphetamine, while the lab report said that the substance was cocaine:

> [Trial court]: All right. With that understanding then, what is your plea: Guilty or not guilty?
>
> [Appellant's counsel]: Before you take a plea, I don't know how many times I've been over this indictment and the lab report, but the indictment actually alleges possession of methamphetamine. The lab report is cocaine. So I need to make sure that [appellant] understands, you know, why we're -- what's going on here and whether or not she is willing to -- you know, not resubmit to a grand jury indictment or willing to waive and allow the amendment, so I need to go over that with her.
>
> [Attorney for the State]: I'm going to move to amend the indictment. My notes say cocaine, so that's -- it's just typed in wrong.

5

[Trial court]: That's fine. And it's probably not technically a different offense and so you're entitled to amend the indictment. I would -- under the law, it's the same offense, possession of a controlled substance, but we're -- so that means the State is entitled to amend the indictment upon their request, and I can grant it. The point of the matter is, though, we're going to just change what's alleged to what the lab test shows.

[Appellant]: Okay.

The trial court granted the State's request to amend the indictment, and the trial court discussed the procedure for amending the indictment. The State informed the trial court that State's Exhibit 4 contained a copy of the indictment and that the State could "mark out methamphetamine and write in cocaine." Exhibit 4 contains a copy of the original indictment in which the word "methamphetamine" has been crossed out and the word "cocaine" has been handwritten in place of the crossed-out word. Appellant, her attorney, and the attorney for the State each initialed this change to Exhibit 4.

Appellant's counsel questioned appellant about the amendment and whether appellant wanted to "go ahead and go forward with that amendment today" and appellant replied "yes." The trial court also asked appellant if she wanted to proceed with the plea that day, and appellant confirmed that she did. The trial court verified that appellant understood she was entitled to ten days to prepare for trial under the amended indictment. Appellant confirmed she understood. The record also reflects that the trial court crossed out the word "methamphetamine" in the original indictment and wrote by hand the word "cocaine" in its place.

At the punishment hearing, the trial court heard testimony from witnesses called by the State and by appellant's trial counsel. The State asked the trial court to assess punishment at imprisonment for life or for 99 years. The trial court assessed punishment at 48 years' confinement and imposed no fine.

6

Appellant timely appealed. The attorney the trial court appointed to represent appellant on appeal timely filed a motion for new trial, complaining that venue was improper in Comal County on the ground that appellant could not obtain a fair trial in that county. Appellant also alleged ineffective assistance of counsel based on trial counsel's alleged failure to investigate appellant's allegation that she is notorious in Comal County and trial counsel's failure to file a motion to change venue. The trial court denied the motion. The Supreme Court of Texas transferred this appeal from the Third Court of Appeals to this court.[2]

This court issued an "Order on Continuing Abatement," in which the court concluded that the record shows appellant's Waiver of Appeal is invalid and does not prevent appellant from appealing as to guilt/innocence or as to punishment. The trial court later filed an amended certification under Texas Rule of Appellate Procedure 25.2 in which the trial court certified that this case is not a plea-bargain case and that appellant has the right of appeal. We now consider the issues appellant presents for appellate review.

## II. ISSUES AND ANALYSIS

### A. Did the trial court violate appellant's due-process rights during the plea hearing by failing to inquire whether appellant was satisfied by her trial counsel's representation or whether appellant wished to proceed without counsel?

Under her second issue, appellant asserts that the trial court violated her due-process rights at the plea hearing because the trial court failed to inquire whether appellant was satisfied by her trial counsel's representation or whether she wished

---

[2] Under Texas Rule of Appellate Procedure 41.3, this court must decide the appeal in accordance with the Third Court of Appeals's precedent under principles of stare decisis if this court's decision otherwise would have been inconsistent with the Third Court of Appeals's precedent. Tex. R. App. P. 41.3.

to proceed without counsel and represent herself.[3]  Appellant does not contend that the trial court failed to comply with the requirements of article 26.13 of the Texas Code of Criminal Procedure; rather, she contends that the trial court violated her due-process rights by failing to ask her whether she was satisfied with her trial counsel's representation and by failing to ask her whether she wished to proceed without counsel and represent herself.  *See* Tex. Code Crim. Proc. art. 26.13.

In the Plea Papers, appellant stated, "I have read this entire document, discussed it fully with my attorney and understand this document completely and I am aware of the consequence[s] of my plea, and *am satisfied I have been effectively represented*."[4]  A paragraph just above appellant's signature in the Plea Papers contains the following sentence in bolded and all capital letters:  "My attorney has discussed with me the law and facts applicable to this case, and I am satisfied that I have been effectively represented."  At the plea hearing, appellant did not express any dissatisfaction with her trial counsel.  The trial court did not ask appellant at the plea hearing whether she was satisfied with her trial counsel's representation, and appellant asserts she had a due-process right to be asked this question by the trial court.  Appellant cites no case in which a court states that a defendant at a plea hearing has a due-process right to be asked this question.  Though some courts may ask a defendant at a plea hearing whether the defendant is satisfied with the defendant's trial counsel, when the defendant has not voiced any dissatisfaction with the defendant's trial counsel, the defendant has no due-process right to be asked whether the defendant is satisfied with her trial counsel's representation, and the trial court need not ask this question.  *See Dixon v. United*

---

[3] Because we already have determined that appellant's Waiver of Appeal is invalid, we do not address appellant's first issue in which she challenges her waiver of the right to appeal as to guilt or innocence.

[4] (emphasis added).

8

*States*, 151 F.Supp.3d 582, 591 (E.D. Pa. 2015) (concluding that trial court had no duty to ask defendant if he was satisfied with his trial counsel's representation because defendant did not indicate that he was dissatisfied with his trial counsel's representation); *State v. Warclub*, 114 P.3d 254, 259–62 (Mont. 2005) (concluding that trial court's failure to ask defendant if he was satisfied with his trial counsel's representation did not provide a basis for defendant to withdraw his "guilty" plea because defendant had stated in his plea papers that he was satisfied with his attorneys and the trial court previously had inquired into defendant's dissatisfaction with his counsel and defendant had stated that he was willing to continue with his current counsel). Thus, the trial court did not violate appellant's due-process rights by failing to ask her at the plea hearing if she was satisfied with her trial counsel's representation. *See Dixon*, 151 F.Supp.3d at 591; *Warclub*, 114 P.3d at 259–62.

At the plea hearing, appellant did not express any desire to represent herself. The trial court did not ask appellant at the plea hearing whether she wished to proceed without counsel and represent herself. Appellant asserts she had a due-process right to be asked whether she wished to proceed without counsel and represent herself. Appellant cites no case in which a court states that a defendant has a due-process right to be asked whether she wished to proceed without counsel and represent herself.

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right to forego counsel and represent themselves. *Funderburg v. State*, 717 S.W.2d 637, 641–42 (Tex. Crim. App. 1986). But the right to self-representation does not attach until the defendant clearly and unequivocally has asserted it. *Id*. at 642. Absent such a clear and unequivocal assertion, the trial court has no duty to inform a defendant as to the right to self-

9

representation or to ask the defendant if the defendant wants to proceed without counsel and represent herself. *See United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994); *Smith v. State*, 641 So.2d 1319, 1320–21 (Fla. 1994); 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(b) (3d ed. 2013). Neither in the Plea Papers nor at the plea hearing did appellant express any desire to represent herself. Because appellant did not clearly and unequivocally assert her right to self-representation, the trial court had no duty to inform her of her right to self-representation or to ask her if she wanted to exercise that right. *See Martin*, 25 F.3d at 295; *Smith*, 641 So.2d at 1320–21; 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.5(b) (3d ed. 2013). Thus, the trial court did not violate appellant's due-process rights by not inquiring at the plea hearing if appellant wanted to proceed without counsel and represent herself. *See Martin*, 25 F.3d at 295; *Smith*, 641 So.2d at 1320–21.

For all of these reasons, we overrule appellant's second issue.

**B. Did the trial court violate appellant's due-process rights at the plea hearing by altering the original indictment?**

In her third issue, appellant asserts that the trial court denied her due process at the plea hearing because the trial court itself corrected the indictment. Appellant argues that the trial court violated her due-process right to a neutral and detached trial judge when the trial judge crossed out the word "methamphetamine" in the original indictment and handwrote the word "cocaine" in its place. Appellant asserts "[t]he trial court stepped out of the role of a neutral arbiter by physically altering the indictment to comport with the evidence, curing the fatal variance that would have existed had the case been tried." Appellant did not raise this complaint in the trial court. The Court of Criminal Appeals has not decided whether a party must preserve error on an argument that the trial judge was not neutral and detached. *See Brumit v. State*, 206 S.W.3d 639, 644 (Tex. Crim. App. 2006);

10

*Barfield v. State*, 464 S.W.3d 67, 81 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We presume for the sake of argument that appellant was not required to preserve error on this complaint in the trial court.

Appellant suggests but does not assert that articles 28.10 and 28.11 of the Code of Criminal Procedure do not allow a trial court to effect an amendment to the indictment by physically altering it and that therefore the trial court violated the requirements of these statutes by physically altering the original indictment to effect the amendment for which the trial court had granted leave. *See* Tex. Code Crim. Proc. art. 28.10, 28.11. Nothing in the text of these statutes addresses who may physically alter the indictment to effect an amendment, and article 28.11 of the Criminal Code of Procedure vests the trial court with the authority to direct the manner by which the amendment is performed: "All amendments of an indictment or information shall be made with the leave of the court and under its direction." *Id*. art. 28.11. Appellant cites no cases in which a court has held that the trial court may not effect an amendment by physically altering the original indictment. The First Court of Appeals, Texas's other Houston-based court of appeals, has held to the contrary. *See Gowans v. State*, 995 S.W.2d 787, 794–95 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (concluding that the trial court properly amended the indictment by physically interlineating the changes on the indictment); *see also Friesel v. State*, 931 S.W.2d 587, 590–92 (Tex. App.—San Antonio 1996, pet. ref'd) (concluding that the trial court properly interlineated on the original indictment to make a ministerial correction).

In *Ward v. State*, the Court of Criminal Appeals held that the only manner by which an indictment properly may be amended is by actually altering the original indictment. *See* 829 S.W.2d 787, 793 (Tex. Crim. App. 1992), *overruled in part by Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000). In *Riney v.*

*State*, the Court of Criminal Appeals overruled the part of *Ward* in which the court held that actual alteration of the original indictment was the only means to accomplish an amendment of the indictment and endorsed another means for effecting an amendment:

> It is acceptable for the State to proffer, for the trial court's approval, its amended version of a photocopy of the original indictment. If approved, the amended photocopy of the original indictment need only be incorporated into the record under the direction of the court, pursuant to Article 28.11, with the knowledge and affirmative assent of the defense. The version of the indictment would then become the "official" indictment in the case . . .

*Riney*, 28 S.W.3d at 565–66. The record reflects that the attorney for the State effected the amendment of the indictment in the manner endorsed by the *Riney* court. *See id*. The trial court made comments indicating that it was not sure that this procedure sufficed to effect the amendment. The trial court appears to have been thinking of the holding of *Ward* that the *Riney* court later overruled. *See* 829 S.W.2d at 793. The trial court indicated that it thought that the law required physical interlineation on the original indictment. Even though the attorney for the State effected the amendment of the indictment in the manner endorsed by the *Riney* court, the trial court stated "[b]ut just to be safe . . . I would prefer that we actually get the indictment just brought in here and let me physically interlineate it, the original. . . They'll bring it to me and I'll interlineate it." The record reflects that the trial court did so after the attorney for the State effected the amendment of the indictment under *Riney*.

Appellant had a due-process right to a neutral and detached judge. *See Brumit*, 206 S.W.3d at 645. Absent a clear showing to the contrary, a reviewing court presumes that the trial judge was neutral and detached. *Id*. The record reflects that the trial court altered the original indictment out of excess of caution,

to be sure that the amendment of the indictment had been effected. Appellant has not shown that the trial court's action reflected bias, partiality, or lack of neutrality on the trial court's part. We conclude that this action by the trial court did not violate appellant's right to a neutral and detached judge. *See id*. (concluding that trial court's comments did not show that appellant's right to a neutral and detached judge had been violated because they did not reflect bias, partiality, or failure to consider the full range of punishment); *Gowans*, 995 S.W.2d at 794–95 (concluding that the trial court properly amended the indictment by physically interlineating the changes on the indictment); *Friesel*, 931 S.W.2d at 590–92 (concluding that the trial court properly interlineated on the original indictment to make a ministerial correction). Accordingly, we overrule appellant's third issue.

## C. Has appellant shown that her trial counsel rendered ineffective assistance that would require reversal?

Appellant complains that her trial counsel rendered ineffective assistance in (1) alerting the State to a "fatal variance" between the indictment and the evidence before appellant pleaded "guilty" and (2) negotiating and advising appellant to sign the Plea Papers, in which appellant pleaded "guilty" and waived various rights but "gained nothing."

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 1.051 (West, Westlaw through 2017 1st C.S.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on

prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland,* 466 U.S. at 688–92. Appellant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

In assessing appellant's ineffective-assistance claims, we apply a strong presumption that trial counsel acted with competence. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient.[5] *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On such a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

---

[5] Though appellant asserted ineffective assistance of counsel in her motion for new trial, she did not raise any of the ineffective-assistance complaints that she has asserted in this appeal. The evidence attached to the new-trial motion did not address her counsel's trial strategy as to the conduct appellant raises on appeal.

### 1. Trial counsel's conduct in alerting the State to indictment's reference to methamphetamine

Appellant's trial counsel, recognizing that the indictment referred to methamphetamine rather than cocaine, alerted the trial court to the problem. Though the record of the plea hearing might suggest that trial counsel discovered the error not long before raising it, the record does not show precisely when the problem became apparent, or whether appellant and her counsel discussed the matter and its consequences outside the courtroom at any prior point. Appellant contends that trial counsel's conduct fell below professional norms because had counsel not so alerted the trial court and the State to the problem, the parties would have carried on under the unamended indictment, which appellant contends would have supported reversible error in the form of a fatal variance between the indictment and the evidence.

Our record contains no evidence as to trial counsel's strategy on this issue. *See Stults*, 23 S.W.3d at 208 ("When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court."). Courts have viewed a defendant's acceptance of responsibility as a recognized trial strategy to earn favor with the factfinder in the second phase of trial in an effort to mitigate punishment. *See Ex parte Davis*, 866 S.W.2d 234, 241–42 (Tex. Crim. App. 1993); *Rodriguez v. State*, 459 S.W.3d 184, 195–96 (Tex. App.—Amarillo 2015, pet. ref'd); *Spencer v. State*, 460 S.W.3d 180, 189 (Tex. App.—Eastland 2015, pet. ref'd). Appellant's counsel may have had a strategy of appellant pleading "guilty" and accepting responsibility under a proper indictment so that she could seek to mitigate her punishment. The conduct made the subject of appellant's complaint was not so outrageous that no competent

attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392. For these reasons, we conclude that as to this ineffective-assistance complaint, appellant has failed to satisfy the first prong of the *Strickland* test.

### 2. Trial counsel's conduct in negotiating and advising appellant to sign the Plea Papers

Appellant asserts that her counsel rendered ineffective assistance in advising her to sign the Plea Papers and in failing to negotiate a better plea agreement. Though the record contains the signed Plea Papers, we have no record of any plea negotiations. The record contains no testimony or other evidence about the negotiations or any lack of negotiations. Nothing in our record suggests the State would have offered a better deal. There is no evidence in our record as to the decisional process by which appellant chose to plead "guilty" or as to trial counsel's strategy in negotiating the Plea Papers and advising appellant to sign them, so any conclusions about trial counsel's performance in connection with the Plea Papers would be based on speculation. *See Stults*, 23 S.W.3d at 208 ("When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court."). As noted, courts have viewed a defendant's acceptance of responsibility as a recognized trial strategy to mitigate punishment. *See Ex parte Davis*, 866 S.W.2d at 241–42; *Rodriguez*, 459 S.W.3d at 195–96; *Spencer*, 460 S.W.3d at 189. Appellant's counsel may have reasoned that by pleading "guilty" and accepting responsibility, appellant might gain favor with the trial court so that she could seek to mitigate the punishment to be assessed. We cannot speculate on trial counsel's reasons or strategy, nor can we conclude that the conduct in question was so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392; *Nicholson v. State*, 577 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). Appellant has failed to satisfy the first prong of the *Strickland*

test as to this ineffective-assistance complaint.

For these reasons, we overrule appellant's fourth issue.

### III. CONCLUSION

The trial court did not violate appellant's due-process rights by failing to ask her at the plea hearing whether she was satisfied with her trial counsel's representation or whether she wished to proceed without counsel and represent herself. Nor did the trial court violate appellant's right to a neutral and detached judge by altering the original indictment to be sure that the amendment of the indictment had been effected. The record in this appeal stands silent as to trial counsel's trial strategy behind the conduct alleged to constitute ineffective assistance of trial counsel, and appellant has failed to satisfy the first prong of the *Strickland* test as to her ineffective-assistance complaints.

We affirm the trial court's judgment.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan.

Publish — TEX. R. APP. P. 47.2(b).

17